## In re LESSER et al.

### (District Court, S. D. New York. March 23, 1900.)

**1.** BANKRUPTCY—ASSETS IN BANKRUPTCY—PROPERTY FRAUDULENTLY CONVEYED.

Under Bankr. Act 1898, § 70, subd. 4, providing that a trustee in bankruptcy shall be vested by operation of law with the title of the bankrupt to all "property transferred by him in fraud of his creditors," such trustee is entitled to avail himself, in like manner as any judgment creditor, of a decree of a state court declaring certain transfers and conveyances of the debtor to have been fraudulent and void, and may claim the property affected, as assets of the estate in bankruptcy, subject to any valid liens or charges against it.

**2.** SAME—DISSOLUTION OF LIENS—VOLUNTARY AND INVOLUNTARY CASES.

Bankr. Act 1898, § 67f, providing that "all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt," applies as well to cases where the debtor is adjudged bankrupt on his voluntary petition as to involuntary cases.

**3.** SAME—JUDGMENT IN CREDITORS' SUIT.

Said section 67f, Bankr. Act 1898, applies to a judgment rendered in a creditors' suit brought to set aside alleged fraudulent conveyances of property made by the debtors, and to vacate a receivership procured by them in a suit for the dissolution of their partnership. If the debtors are adjudged bankrupt within four months after the rendition of such judgment, the adjudication deprives the creditor of any prior right to satisfaction out of the fund recovered or set free.

**4.** SAME—INCHOATE EQUITABLE LIEN.

Under the laws of New York, a judgment creditor who files a creditors' bill to reach equitable assets or set aside fraudulent conveyances thereby acquires an equitable lien, but such lien depends for its perfection and enforcement upon the recovery of a valid judgment in his suit; and, if such judgment is annulled by the adjudication of the debtor as a bankrupt within four months thereafter, the creditor's lien falls with it, and he has no rights in the fund superior to those of other creditors.

**5.** SAME—JURISDICTION—PARTIES.

A court of bankruptcy has jurisdiction over a judgment creditor of the bankrupt, for the purpose of enjoining him from proceeding in a state court for the enforcement of his judgment against property of the debtor, where the judgment was rendered null or inoperative by the adjudication of the debtor as a bankrupt within four months after its rendition, because all creditors are parties to the proceedings in bankruptcy, and because the court has power to restrain any person from illegally possessing himself of assets of the estate.

**6.** SAME—RIGHTS OF JUDGMENT CREDITOR.

A creditor who has recovered a judgment against his debtor more than four months before the filing of a petition in bankruptcy against the latter may be permitted by the court of bankruptcy to enforce his judgment by execution against real property of the bankrupt on which it is a legal lien.

**7.** SAME—RECOVERY OF ASSETS—PROPERTY IN POSSESSION OF RECEIVER.

Where property belonging to the estate of a bankrupt is in the custody and possession of a receiver appointed by a state court, the trustee in bankruptcy should apply to the state court for an order directing the receiver to turn over the property to him.

**8.** SAME—COSTS—ALLOWANCE OF EXPENSES TO CREDITORS.

Where a judgment creditor, who has successfully prosecuted litigation to set aside fraudulent conveyances by the debtor and recover the property affected, loses his prior right to satisfaction out of the fund by the adjudication of the debtor as a bankrupt within four months after the recovery of the decree, so that the results of his efforts accrue to the benefit of

100 F.—28

creditors generally, it is competent for the court of bankruptcy to make him a reasonable allowance out of the estate as indemnity for his costs and expenses.

In Bankruptcy. On application by trustee in bankruptcy for an order staying proceedings in a state court by judgment creditors of the bankrupt.

Anderson & Anderson, for trustee in bankruptcy.

Stickney, Spencer & Ordway, for judgment creditors.

Henry V. Rothschild, for Stieglitz & Ballin.

BROWN, District Judge. This is an application to the court by a trustee in bankruptcy of Lesser Bros. upon an order directing Metcalf Bros. & Co., judgment creditors of the bankrupts, to show cause why further proceedings by them upon a judgment creditors' bill, pending in the supreme court of the state and seeking to have applied to their judgment certain assets of the bankrupts fraudulently conveyed, should not be stayed. A temporary injunction was granted until the hearing and decision of this motion. The facts are somewhat complicated, and the dates of the several proceedings, as well as the kind of assets affected, are important.

On October 22 and 29, 1896, Metcalf Bros. & Co. obtained judgments against the bankrupts in the supreme court of the state for the sums of $930.21 and $2,547.80 respectively, on which executions were issued and returned unsatisfied. Shortly before the entry of those judgments, viz., on October 2, 1896, Lesser Bros., being insolvent, confessed three judgments amounting in the aggregate to upwards of $18,000, upon which executions were on the same day issued and levies made by the sheriff upon all the bankrupts' leviable property, consisting of a stock of clothing material, store furniture and fixtures. They also on the same day executed two assignments of a large amount of book accounts due the firm, and a deed of conveyance of premises 495 Manhattan avenue and an assignment of the lease of premises 306 West Fifty-Fifth street. On the same day also a partnership action was commenced for the dissolution of the firm, and on the same day, by consent of the parties, Morris Moses was appointed receiver of the firm, and afterwards, at the instance of some creditors, James T. Franklin was added as joint receiver. Within a few days thereafter numerous actions of replevin were brought against the firm by creditors to recover back goods claimed to have been sold under fraudulent representations. The claims of the creditors to the goods were so conflicting that an action in equity was brought against them all by the partnership receivers in the state court, and an injunction obtained against prosecuting the replevin suits, and an order was made on November 23, 1896, directing that certain of the goods claimed in replevin should be delivered to the claimants, and that the plaintiffs in the other actions in replevin might present their claims before a referee. The receivers, the plaintiffs, were also appointed receivers in their own suit, and were authorized to sell all the other goods, and to hold the proceeds in place of the

goods, subject to the final order of the court and subject to the same liens as the goods. Under that order sales were made by the receivers as authorized, and about $27,000, it is said, came into their hands as the proceeds thereof and of some other collections.

Thereafter on December 19, 1896, Metcalf Bros. & Co., the judgment creditors, filed a creditors' bill in the state court based upon their judgments of October 22d and 29th, as above stated, against the partnership receivers and the persons to whom Lesser Bros. had confessed judgments and transferred the real estate, lease and book accounts as above stated, to have all those transfers declared fraudulent as well as the partnership suit; and after trial, a decree therein was entered on April 6, 1898, adjudging the aforesaid assigments, confessions of judgment and transfers of the real estate, the lease and the accounts, fraudulent as against Metcalf and others, as well as against the partnership receivers. The decree also declared that the real estate and lease conveyed, as above stated, were subject to the lien of the plaintiffs' judgments first above stated; and directed that all the other property or its proceeds should be paid over or accounted for to the partnership receivers. No receiver was ever appointed in the suit of Metcalf. That decree gave no directions as to what the receivers should do with the property; but the opinion of Judge Russell shows that it was designed to be held by the partnership receivers for the benefit of the partnership creditors pro rata; and that any payment or preference to the complainants in that suit was intentionally denied. Metcalf v. Moses, 22 Misc. Rep. 664, 50 N. Y. Supp. 1060.

From the decree last mentioned, an appeal was taken by both parties to the appellate division, upon whose decision a judgment or decree was entered on January 31, 1899, affirming the decree below as to the fraudulent character of the transactions above stated, but adjudging that the complainants were entitled to be paid their original judgments out of the fund in the hands of the partnership receivers; but reversing the decree below as respects the two assignments to Adler and Lilienthal as being unnecessary for the complainants' relief. 35 App. Div. 596, 55 N. Y. Supp. 179. An appeal was thereupon further taken by both parties to the court of appeals, which affirmed the judgment of the appellate division directing payment of the complainants' claims and adjudging all the transactions fraudulent, including also the appointment of the receivers in the partnership suit, as a fraud and imposition upon the court. The remittitur from the court of appeals was filed a few days since, on or about March, ———.

While the latter appeal was pending in the court of appeals, Lesser Bros. filed their petition in bankruptcy in this court on May 12, 1899, which was less than four months after the decree of the appellate division adjudging payment to Metcalf & Co. out of the fund in the receivers' hands; and the firm and its members were on the same day adjudicated bankrupts, and on the 7th day of June, 1899, Mr. Barker was appointed trustee.

The present bankruptcy act (section 67f), unlike the previous acts of 1841 and 1867, declares that all judgments, attachments or other liens obtained through legal proceedings, etc., within four months prior to the petition in bankruptcy

"Shall be deemed null and void * * * and the property affected by the levy, judgment, attachment or other lien shall be wholly discharged and released from the same and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall on due notice order that the right under such lien, judgment," etc., "shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect."

This provision, it has been held, applies to voluntary petitions. Section 70 declares that the trustee shall be vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, to all

"(4) Property transferred by him in fraud of his creditors."

The court of appeals having finally adjudged that all the conveyances above specified and the partnership receivership were fraudulent and void as to creditors, the trustee in bankruptcy is entitled by operation of law (section 67e), to avail himself of the benefit of that adjudication in like manner as any judgment creditor of the bankrupt. The fund in question and the property transferred should, therefore, be delivered over to Mr. Barker as trustee in bankruptcy, subject only to any valid liens or charges against it. Upon the above facts what lien, if any, have Metcalf & Co., the judgment creditors, upon the fund in the hands of the partnership receivers?

No doubt by the recognized law of this state, creditors on filing a creditors' bill to reach equitable assets, or a fund not subject to a levy and sale on execution, acquire by filing the bill what is termed an equitable lien, which gives them on obtaining a decree a priority over other creditors subsequently seeking relief against the same fund. This equitable lien, however, is not a jus in re; it is not a vested property right like the common-law lien of a person in possession for labor or care or maintenance, nor like a maritime lien or hypothecation with a similar vested property interest without possession; it is nothing more than a provisional equitable attachment of the fund for the purpose of satisfying any decree that may be obtained in that cause. It is, therefore, contingent upon the recovery of a valid judgment, and liable to be defeated by anything that defeats the judgment, or the right of the complainants to appropriate the fund. This is clear from the authorities and from the history of the growth of the recognition of this lien. See Becker v. Torrance, 31 N. Y. 631, 637; Lynch v. Johnson, 48 N. Y. 27, 33; Bank v. Shuler, 153 N. Y. 163, 171, 47 N. E. 262; Ex parte Foster, 2 Story, 131, 9 Fed. Cas. 508, where this subject is elaborately discussed; Smith v. Gordon, 22 Fed. Cas. 554; Ex parte Waddell, 28 Fed. Cas. 1312, per Betts, J. In Edmonston v. McLoud, 16 N. Y. 543, this point was in effect directly adjudged, it being held that a final order appointing a receiver in supplementary proceedings (equivalent to a creditors' bill) was essential to perfect the equitable lien;

and that as this had not been done, but the proceedings had been virtually abandoned, the defendant who had been in possession of the fund with notice of the proceedings, and having disposed of it, was not answerable to the plaintiff.

In the opinion of Judge Russell in this very case also (22 Misc. Rep. 667, 50 N. Y. Supp. 1062) he says that

"The plaintiffs here can only claim an equitable lien such as is ordinarily impressed upon property by a favorable judgment following the filing of a creditors' bill";

and in the opinion of the appellate division, Rumsey, J., it is said:

"There is no logical or legal reason why the court * * * should practically deprive them [the complainants] of the lien upon the property in the hands of the receivers which they otherwise would have acquired by the entry of this judgment." 35 App. Div. 606, 55 N. Y. Supp. 185.

Such a contingent or equitable lien, it is evident, cannot be superior to the judgment on which it depends to make it effectual, but must stand or fall with the judgment itself. Section 67f, therefore, in declaring that a judgment recovered within four months "shall be deemed null and void," etc., necessarily prevents the complainants from acquiring any benefit from the lien, or the fund attached, except through the trustee in bankruptcy pro rata with other creditors, which in effect accomplishes the same result as the original judgment of Russell, J., at special term.

Suppose that in an action for libel, or slander, or for a penalty, or for any other action that would die with the person, an attachment were levied for the full amount of the claim, as may be done in many of the states, Connecticut for example, although attachments in such cases are not allowed under the Code in New York; if the party die before judgment, and the action could not be revived, it is manifest that the attachment must fall; not because the attachment was not valid, but because no lawful judgment could be obtained to which it can be applied. And so if an undertaking had been given for a release of the property attached, manifestly the undertaking would also become null and void by the abatement of the action before judgment.

It cannot be otherwise here, since the only existing judgment by which this lien or the fund thereby attached could be made available to the plaintiffs, was recovered within less than four months of bankruptcy proceedings. The judgment at special term did indeed direct the property to be turned over or accounted for to the partnership receivers. That judgment was more than four months before the bankruptcy; and if it still remained in force, it would be valid as against the trustee in bankruptcy, although as above stated it would result, as in bankruptcy, in an equal distribution among creditors, without preference to the complainants. But that judgment has been reversed by the appellate division, and the latter judgment was in that regard affirmed by the court of appeals. The result, therefore, is that there is no judgment authorizing payment of this fund to the complainants, or to any persons for their benefit, except the judgment entered within less than four months of the proceedings in bankruptcy, and that judgment, so far as it con-

fers any preference upon the complainants, is made null and void by section 67f of the bankrupt act.

The case of Brown v. Nichols, 42 N. Y. 26, is in no way adverse to the above conclusion, but in entire accord with it. There the judgment debtor having died during the action, the suit was revived against his administrator; and it was held that the lien acquired by the filing of the creditor's bill before his death, also survived and was applicable on the judgment afterwards obtained against the administrator. In that case there was nothing to prevent the rendition of a valid judgment through the revival of the action; and the prior lien therefore remained available, and the administrator, it was held, took the assets charged with that lien. And such plainly would have been the result under the act of 1867, which did not invalidate judgments acquired within four months like the present act. The fund here in question, therefore, having vested in the trustee in bankruptcy, though charged with an inchoate equitable lien, in case the plaintiff could legally make it available, is freed from it because the plaintiff did not recover and cannot recover any judgment by which they can avail themselves of it as against the trustee in bankruptcy.

As there are other suits and liens, however, affecting the fund in question, this court should order, in accordance with the further provisions of section 67f, that the right of the complainants under the lien and judgment "shall be preserved for the benefit of the bankrupts' estate" and such "conveyance thereof as shall be necessary" for that purpose.

Objection was interposed at the outset in behalf of Metcalf & Co., the complainants in the creditors' bill, that this court has not jurisdiction over them to make any order in the premises. But Metcalf & Co., as creditors, are of necessity parties to the proceedings in bankruptcy; and aside from this, if the above view of the legal rights of the parties is correct, it is manifest from the terms of the act that the court has jurisdiction to restrain any person from illegally possessing himself of assets and depleting the estate, contrary to the terms of the act, and in fraud of the rights of other creditors. Section 2 (6), (7), (15); Section 67f; In re Fellerath (D. C.) 95 Fed. 121; In re Kenney, Id. 427.

The above ruling does not affect the complainants' right under their original judgments of November, 1896, to proceed by execution against the real estate on which those judgments were a legal lien. The effect of the decrees in the creditors' suit will moreover be to clear away the cloud upon the title of the real estate created by the fraudulent conveyances, and enable them to sell the property clear of that apparent charge, and subject only to prior legal incumbrances, if any. To that extent the stay should be modified and permit the entry of a further judgment, if that be necessary, adjudging all of said transfers and assignments and the receivership to be fraudulent and void.

It is not necessary to consider, in view of the above conclusion, whether the proceeds of the goods and chattels sold by the receivers under the order of the supreme court, should be deemed still to re-

tain their character as chattels, or as being equitable assets in the receivers' hands.

Although the partnership receivers under the adjudication in the court of appeals have no legal title to the property, they are still the custodians of it, as officers of the state court appointed in the second equity suit as above stated. The fund is, therefore, in the custody of the state court, and the trustee should apply to that court to make the proper order for the payment thereof by its receivers to the trustee, in whom it is vested by the bankrupt act. The obligations of the bankrupt act are as binding upon that court as upon this; and it is not to be doubted that on proper application the state court will give appropriate directions. Ex parte Waddell, Fed. Cas. No. 17,027.

In cases of this character where the party on whom the burden has fallen loses the fruits of laborious litigation, and the full benefit of it accrues to others, it is competent for the court to make a reasonable allowance as indemnity for the costs and expenses by which these benefits have been obtained; and accordingly if the funds above named are turned over to the trustee without further unnecessary costs or expenses to the estate, such an allowance should be provided for on the settlement of the order to be entered hereon.

An order in accordance herewith may be submitted for settlement on two days' notice.